_____

No. 96-1001

_____

State of Missouri,                      *
                                        *
        Plaintiff - Appellee,           *
                                        *
United States of America,               *
                                        *
        Intervenor-Plaintiff -          *
        Appellee,                       *
                                        *
        v.                              *
                                        *
Independent Petrochemical              *
Corporation; Russell Martin            *
Bliss; Jerry-Russell Bliss,            *
Inc.,                                   *
                                        *
        Defendants,                     *
                                        *
Syntex Laboratories, Inc.;             *
Syntex Agribusiness, Inc.;             *
Syntex U.S.A., Inc.; Syntex            *
Corporation,                            *
                                        *
        Defendants - Appellees.         *

Appeal from the United States
   District Court for the Eastern
*  District of Missouri.

United States of America,               *
                                        *
        Plaintiff - Appellee,           *
                                        *
St. Louis County,                       *
                                        *
        Intervenor-Plaintiff -          *
        Appellant,                      *
                                        *
        v.                              *
                                        *
Russell Martin Bliss;                   *
Independent Petrochemical              *
Corporation,                            *
                                        *
        Defendants,                     *
                                        *
United States of America;               *
Syntex,                                 *

                                                    *
     Defendants - Appellees.                        *
———————————————————————————————————

State of Missouri,                                  *
                                                    *
     Plaintiff - Appellee,                          *
                                                    *
     v.                                             *
                                                    *
Russell Martin Bliss,                               *
                                                    *
     Defendant.                                     *
———————————————————————————————————

State of Missouri,                                  *
                                                    *
     Plaintiff - Appellee,                          *
                                                    *
     v.                                             *
                                                    *
Syntex U.S.A., Inc.,                                *
                                                    *
     Defendant.                                     *
———————————————————————————————————

United States of America,                           *
                                                    *
     Plaintiff - Appellee,                          *
                                                    *
     v.                                             *
                                                    *
Russell Martin Bliss,                               *
                                                    *
     Defendant.                                     *
———————————————————————————————————

United States of America,                           *
                                                    *
     Plaintiff - Appellee,                          *
                                                    *
     v.                                             *
                                                    *
Russell Martin Bliss,                               *
                                                    *
     Defendant.                                     *

                         _____

          Submitted:  September 12, 1996

                            -2-

Filed:  January 3, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON and ROSS, Circuit
     Judges.

_____

ROSS, Circuit Judge.

St. Louis County appeals from the district court's[1] denial of its
motion to intervene and from the court's ruling on the Syntex defendants'
motion to construe and enforce compliance with the Consent Decree in
connection with the cleanup of toxic waste in Times Beach, Missouri.  We
affirm.

Various aspects of this litigation have been pending in federal court
since 1984, when the United States commenced a civil action against the
Syntex defendants pursuant to the Comprehensive Environmental Response,
Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601, et seq., and
the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901, et
seq., to seek remedial relief and recovery of response costs in connection
with the release of dioxin and other hazardous substances at Times Beach,
Missouri, and twenty-six other sites in eastern Missouri in the early
1970s.

On September 28, 1988, the Environmental Protection Agency (EPA)
issued a Record of Decision (ROD) in which it selected thermal treatment,
a form of incineration, as the cleanup remedy for these sites.  The ROD
announced the applicable or relevant and appropriate standards (ARARs)
identified by the EPA in accordance with § 121(d)(1) of CERCLA, 42 U.S.C.
§ 9621(d)(1), with which the defendants were required to comply in the
installation and operation of the thermal treatment unit at the Times Beach
site.

_____

[1]The Honorable John F. Nangle, Senior United States District
Judge for the Eastern District of Missouri.

In 1990, the Syntex defendants entered into a Consent Decree with the EPA and the State of Missouri which called for the parties to remediate the twenty-seven affected sites. Five workplans, including a Thermal Treatment Workplan that described how the remedial work was to be performed, were incorporated by reference into the Consent Decree. The decree and its workplans contemplated that the Syntex defendants would apply for a Hazardous Waste Management Permit from the EPA and the State of Missouri to construct and operate the incinerator.

A permit application was submitted on July 30, 1993, and a draft EPA/Missouri Hazardous Waste Management Facility Permit was issued on December 16, 1994. This Draft Permit proposed a formula for establishing the allowable quantity of dioxin and metals emissions necessary to ensure that these emissions did not exceed health-based standards established by law. This formula was based upon a site-specific Times Beach Risk Assessment analyzing risks conservatively projected for the initial phase of this particular incineration project. The Permit and the Risk Assessment concluded that the project could be conducted safely so long as less than approximately one nanogram of dioxin per dry standard cubic meter of air ( 1 $ng/m^3$ ) was emitted from the incinerator at any time. In effect, for this project, the term "safely" was defined by EPA and the State of Missouri as not subjecting even the most heavily exposed individuals to more than a one in a million chance of developing cancer. This level of risk, which is also often expressed as $1 \times 10^{-6}$, constitutes the most stringent level that EPA is authorized to impose upon any Superfund project. 40 C.F.R. § 300.430(e)(2). On January 31, 1995, a public hearing was held concerning the Draft Permit. Written comments were also invited and several hundred pages of suggestions and reactions were received.

On February 8, 1995, shortly after the hearings concerning the

EPA/Missouri Draft Permit, the County Council of St. Louis County (the County) amended its Air Pollution Control Code by enacting an ordinance purporting to impose new, strict standards for inclusion in air emissions permits for any "incinerator intended to burn known concentrations of . . . dioxin." The only such incinerator in the County was the incinerator at Times Beach. Among other things, the ordinance purported to establish a dioxin emissions standard of .15 ng/m$^3$, more than six times as restrictive as the 1 ng/m$^3$ standard that EPA and the State of Missouri had determined to be appropriate. Although the EPA and the State were aware the County ordinance had been enacted two months earlier, the Final EPA Permit subsequently issued on April 14, 1995, nevertheless retained the less restrictive 1 ng/m$^3$ standard.

In response to the County ordinance, the Syntex defendants filed a motion requesting the district court to construe and clarify their obligations pursuant to the Consent Decree. The United States supported Syntex's motion. After the Syntex defendants filed their motion to construe, the County filed a motion to intervene as a matter of right, or in the alternative for permissive intervention, arguing that it had an interest in the interpretation and enforcement of its ordinance. The district court solicited a memorandum from the County addressing the issues raised in both the motion to intervene and the motion to construe.

On August 15, 1995, after considering the County's memorandum, the court denied the County's motion to intervene as a matter of right, but stated that its "request to permissively intervene . . . has effectively been granted," as the County had the opportunity to file a brief in opposition to Syntex's motion to construe. The court subsequently entered an order declaring the County ordinance "inapplicable to the Times Beach project" and limiting the scope of the County air permit to "control of conventional air pollutants, not including dioxin." The court concluded the Consent Decree did

not obligate the parties to comply with the newly-enacted County ordinance. We do not discuss the intervention issue in detail because even if we were to assume the court erred in denying the motion to intervene, any error was harmless given the fact that the County had the opportunity to present its position regarding Syntex's motion to construe and effectively was heard. Instead, we turn to the substantive issue presented in this appeal.

In reviewing a district court's interpretation of a consent decree, this court must look to rules of contract interpretation. <u>United States v. Knote</u>, 29 F.3d 1297, 1299 (8th Cir. 1994). The review is <u>de novo</u> where the interpretation is based solely on the written document and clearly erroneous where the interpretation is based on extrinsic evidence. <u>Id</u>. at 1299-1300. However, when interpreting the meaning of a consent decree, "we are not to ignore the context in which the parties were operating, nor the circumstances surrounding the order. This is because a consent decree is a peculiar sort of legal instrument that cannot be read in a vacuum." <u>Id</u>. at 1300 (citation omitted). A consent decree is "a kind of private law, agreed to by the parties and given shape over time through interpretation by the court that entered it. We therefore give a large measure of deference to the interpretation of the district court that actually entered the decree." <u>Id</u>. (citation omitted).

The County now argues that the parties to the Consent Decree agreed that Syntex would submit to the County's permitting authority, even though they were not required to do so by federal law. While the Thermal Treatment Workplan expressly acknowledges that under § 121(e)(1) of CERCLA, no local permit is required for any removal or remediation action conducted onsite, the Syntex defendants nevertheless agreed to apply for air, water and hazardous waste permits to construct and operate the thermal treatment unit, including a "St. Louis County Department of Health air construction/operating permit for the Thermal Treatment Unit."

It is this clause in the workplan upon which the County maintains it has authority to enforce its 1995 ordinance.

The County overlooks the fact, however, that federal regulations provide that all ARARs are "frozen" as of the date of the ROD unless the EPA determines that new standards are "necessary to ensure that the remedy is protective of human health and the environment." See 40 C.F.R. § 300.430(f)(1)(ii)(B)(1).[2] This regulatory requirement was specifically incorporated into the Consent Decree and its attached Thermal Workplan.[3] The EPA's rationale for freezing the applicable standards as of the date of the ROD is to prevent "continually changing remedies to accommodate new or modified requirements," which would "adversely affect the operation of the CERCLA program, [and] would be inconsistent with Congress' mandate to expeditiously clean up sites." 55 Fed. Reg. 8666, 8757 (1990).

The district court correctly ruled that the "EPA has not and could not logically make a determination that the County's new .15

---

[2] 40 C.F.R. § 300.430(f)(1)(ii)(B)(1) provides:

Requirements that are promulgated or modified after ROD signature must be attained (or waived) only when determined to be applicable or relevant and appropriate and necessary to ensure that the remedy is protective of human health and the environment.

[3] The Workplan provided in part:

The Work, as defined in the Consent Decree, must attain a requirement that is promulgated or modified after September 29, 1988 (the date of signature of the ROD) only when the EPA Administrator (or his delegate) determines, upon a finding based on the best scientific judgment available to EPA, that such requirement is . . . necessary to ensure that the Work is protective of human health and the environment. . ..

Thermal Treatment Workplan, at 6-11. See also Consent Decree, ¶ 6-7.

ng/m$^3$ standard is 'necessary,' since it has already determined in its recent Final Permit that approximately 1 ng/m$^3$ is adequate." The EPA was aware of the ordinance standards when it issued its Final Permit and declined to adopt the stricter standards. The EPA did not make the determination that a stricter dioxin emission standard was necessary to protect human health and the environment. In fact it implicitly rejected this standard by choosing not to adopt it in the Final Permit. Accordingly, federal law does not permit the modification of the dioxin emission standard at this late date.

We also reject the County's assertion that the workplan authorizes the County to impose dioxin standards after the September 1988 freeze date. Notwithstanding that the Thermal Treatment Workplan appended to the Consent Decree reflects a limited agreement among the parties that Syntex would apply to the County for a permit regarding certain air emissions from the incinerator, that agreement only mentions certain conventional pollutants, not including dioxin. This provision never contemplated that seven years later the County would amend its air emissions ordinance in such a restrictive manner.

The workplans do not suggest an intent by the parties to alter or waive the fundamental proposition in federal law that ARARs are frozen as of the date of the ROD. Nowhere does the workplan grant the County authority to unilaterally modify the ARARs established in the ROD. To the contrary, the Thermal Treatment Workplan specifically states that the ARARs are frozen as of the date of signature of the ROD, absent an EPA finding that an alteration is necessary to ensure the protection of human health and the environment. As stated previously, the EPA has made no such finding.

Despite its awareness of the project, the County did not ask

the state to nominate any standard regarding dioxin emissions to be included in the ROD in 1988.  Its ordinance was not approved until February 8, 1995, almost seven years after the ROD froze the relevant standards. The County cannot now alter these standards by inserting more restrictive language into its county air permit.  See United States v. Akzo Coatings of America, Inc., 949 F.2d 1409, 1454-55 (6th Cir. 1991) (once a consent decree is entered by a federal court under CERCLA, alternative state remedies may not be pursued).

The County's ordinance regarding the air emissions of dioxin is inconsistent with federal law and is inapplicable to the Times Beach project.  The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.